UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MICHAEL GLASS,**

      **Plaintiff,**                                 **CASE NO.   5:14-cv-00031-RS-EMT**

vs.

**FRANK McKEITHEN, in his official capacity
as SHERIFF of BAY COUNTY, FLORIDA,
and CHAD KING, individually,**

      **Defendants.**
_____/

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Michael Glass, denies all facts contained in Defendants' Statements of Facts [Docs. 24 and 25] not expressly admitted herein. Plaintiff hereby provides this Statement of Material Facts in Response to Defendants' Motions for Summary Judgment [Docs. 24 and 25], and provides the following:

At some point in 2009 and early 2010, Plaintiff resided at 7204 Nebraska Street in Panama City. [Ex. A, Glass Dep. 11:9-11]. Plaintiff moved in on or about September 17, 2009. [Ex. A, Glass Dep. 11:22-24]. His step brother, William Bryant, needed a roommate, thus Plaintiff moved in. [Ex. A, Glass Dep. 11:25 – 12:5]. There were two bedrooms in the trailer located at 7204 Nebraska Street, and Plaintiff occupied one of them. [Ex. A, Glass Dep. 12:15-21]. Plaintiff believes that when he and Mr. Bryant had an argument and Plaintiff moved out of the trailer in late January 2010, another person, Mr. Horton, moved into the trailer in Plaintiff's place. [Ex. A, Glass Dep. 12:22 – 13:9].

At some point, likely in early February 2010, Sgt. Chad King ("Defendant King") received an anonymous tip regarding the Nebraska Street residence from Sheriff McKeithen. [Ex. C, King Dep., 28:2-7; see also Exhibit 1-C,]. Defendant King was assigned to the matter and executed the search warrant for the residence at 7204 Nebraska Street in Panama City, on February 5, 2010. [Ex. C, King Dep. 5:5-11]. Prior to executing the search warrant, Defendant King had information from the MethCheck that indicated that those named in the anonymous tip had purchased pseudoephedrine. [Ex. C, King Dep. 17:14 – 18:2].

The execution of that search warrant revealed evidence suggesting the presence of a methamphetamine laboratory, however, the lab itself was not located in Plaintiff's former bedroom within the Nebraska Street residence. [Ex. C, King Dep. 23:19 – 24:1].

The Property/Evidence Recovery/Seizure Form prepared as a result of that search indicated only that there were three "letters addressed to Michael Glass found in middle bedroom". [See Exhibit 1-D]. Ultimately, the only thing found in the middle bedroom, the room that Plaintiff previously occupied, was a letter to the IRS bearing Plaintiff's name with an address different than Nebraska Street. [Ex. C, King Dep., pgs 6-7; see also Exhibit 1-F]. Although Defendant King claims it was "two or three" letters, and that he does not recall the address on those letters, [Ex. C, King Dep. 6:25 – 7:9], he was only able to identify one letter. [Ex. C, King Dep. 7:17 – 8:15, see also Exhibit 1-F].

No individual item on the inventory led Defendant King to believe that Plaintiff was involved in a crime. [Ex. C, King Dep., 19:1-12, see also Exhibit 1-I]. Besides the letter from the IRS [Exhibit 1-F], there was no evidence of drugs or paraphernalia in Plaintiff's former bedroom. [Ex. C, King Dep., 21:22 – 23:1; see also Exhibit 1-I]. Defendant King was never able to confirm whether any of the pseudoephedrine that Plaintiff purchased was used to make

methamphetamine [Ex. C, King Dep. 32:24 – 33:23] and there was no evidence that the pseudoephedrine Plaintiff purchased was used to make or cook methamphetamine. [Ex. C, King Dep. 19:21 – 20:7, 21:22 – 23:1; see also Exhibit 1-I,].

The one and only letter in existence, or provided to the state court during the suppression hearing, is dated October 13, 2009, and is addressed to Plaintiff at a Southport, Florida, address. [See Exhibit 1-F]. Indeed, there is no evidence that Plaintiff committed any criminal activity at all, outside of the statement taken after the illegal seizure of Plaintiff at the Sheriff's Office, discussed below. [Ex. C, King Dep. 9:2-6]. Other than the alleged multiple letters, the only evidence Defendant King had related to Plaintiff came from the anonymous tip, which merely referenced Plaintiff's name. [Ex. C, King Dep. 9:7-12].

Plaintiff became aware that Mr. Bryant was arrested and the trailer on Nebraska Street searched through his family connections, but had no firsthand knowledge of the events. [Ex. A, Glass Dep. 17:1 – 18:16]. Plaintiff's mother, who is Mr. Bryant's step-mother, convinced Plaintiff to go to the Sheriff's office, as she convinced him there was probably a warrant out for his arrest. [Ex. A, Glass Dep. 18:9-20].

Plaintiff went to the Warrants Division, and provided the officer on duty his identification. [Ex. A, Glass Dep. 19:3 – 20:12]. At the time Plaintiff went to the Warrants Division to inquire about a warrant, Defendant King had not prepared a warrant, but claims he had probable cause to make the arrest, including, the anonymous tip, the mail, the purchase of pseudoephedrine, and apparently the "inability to be inside the residence without knowing there [was] a meth lab inside". [Ex. C, King Dep. 21:14 – 22:7].

Richard South was working in the Warrants Division within the Bay County Sheriff's Office on the day Plaintiff came to inquire about the warrant. [Ex. B, South Dep. 3:19-20, 5:1-6,

5:13-17]. He was in his uniform, and wearing his badge at the time. [Ex. B, South Dep. 6:7-12]. Although he did not recall the event specifically, he testified that under normal circumstances, if someone inquired about a warrant, he would research the issue, and if there was no warrant, he would inform the person at which point he or she would be free to leave. [Ex. B, South Dep. 7:7-18].

When Plaintiff appeared at the Bay County Sheriff's Office on February 6, 2010, he indicated to Richard South that he thought there may be a warrant out for his arrest, and asked if the officer could check. [Ex. A, Glass Dep. 19:24 – 20:12]. The officer told Plaintiff there was no warrant. [Ex. A, Glass Dep. 20:8-12]. Notwithstanding that there was no warrant and no probable cause to believe that Plaintiff committed a crime, Defendant King instructed Deputy South to put Plaintiff into an interview room. [Ex. C, King Dep. 25:13-22]. According to Defendant King, the fact that Plaintiff came to the Warrants Division to inquire about a warrant "show[ed] a little bit of guilt as well". [Ex. C, King Dep. 24:18 – 25:12].

Plaintiff was then taken to an investigation room- a small room with a desk and two chairs. [Ex. A, Glass Dep. 22:13-18]. Eventually Defendant King arrived and began to question Plaintiff about events occurring at the trailer. [Ex. A, Glass Dep. 22:22 – 23:2]. At no point after he was taken into the room was Plaintiff free to leave. [Ex. C, King Dep. 26:1-7, see also Exhibits 1-K and 1-L ].

After he was questioned by Defendant King on February 6, 2010, Plaintiff was arrested by Defendant King and charged with principal to manufacturing methamphetamine. [Ex. A, Glass Dep., pgs 25-26]. Plaintiff had no idea that others used the trailer to make methamphetamine or what Mr. Bryant used the pseudoephedrine for. [Ex. A, Glass Dep. 24:5-12].

Plaintiff appeared before a judge the morning after his arrest and his bond was set at $15,000, which he was unable to post. [Ex. A, Glass Dep., pgs. 29-30]. Plaintiff's public defender attempted to secure a lower bond after Plaintiff's mother was diagnosed with cancer, but he was unsuccessful. [Ex. A, Glass Dep. 30:16-24]. Ultimately, Plaintiff was in jail for 335 days. [Ex. A, Glass Dep. 33:2-4].

During the criminal proceedings in state court, Plaintiff's attorney filed a Motion to Compel Discovery related to the "Documentation on Glass" identified on the Inventory Sheet of the search warrant. [Exhibit 1-B]. Only one responsive letter was produced. Plaintiff's counsel further filed a Motion to Suppress the statement Plaintiff gave to Defendant King after he was placed into the interrogation room. [Exhibit 1-C].

Defendant King prepared an affidavit in response to Plaintiff's Motion to Suppress filed in the criminal action. [See Exhibit 1-A]. In that Affidavit, he identified five alleged facts that supported his belief that he had probable cause to arrest Plaintiff prior to any conversation with Plaintiff, which included: the anonymous tip, the MethCheck results, evidence supporting the existence of a methamphetamine laboratory within the Nebraska Street residence, and letters addressed to Plaintiff found within the residence. [See Exhibit 1-A].

During the hearing on the Motion to Suppress in the criminal matter, Defendant King had the opportunity to present any evidence he had related to Plaintiff. [See transcript of hearing on Motion to Suppress filed as Exhibit 1-C]. He testified during the suppression hearing that he had documentation, perhaps some mail, indicating that Plaintiff was living at the Nebraska Street address. [Ex. C, King Dep., 8:23 – 9:9, see also Exhibit 1-C,]. But that mail was found in a bedroom, not in the area where the methamphetamine evidence was located. [Ex. C, King Dep., 11:17 – 12:13, see also Exhibit 1-C, passim].

The only letter in existence purported to have been discovered in Plaintiff's former bedroom was dated October 13, 2009, and was addressed to Plaintiff at an address different that the Nebraska Street address. [See Exhibit 1-F].[1] Defendant King presently has no evidence, beyond that single letter, to demonstrate that Plaintiff was in any way involved with the activities at the Nebraska Street residence. [Ex. C, King Dep. 15:25 – 16:21].

Allie Bryant and Plaintiff's brother, Rickie Glass, prepared affidavits testifying that the warrant deputy, who the Plaintiff now knows to be Richard South, commanded Plaintiff and stated "we need you back here in the back to wait for the narcotics officer and it might be some time because it's a Saturday night". [See Exhibits 1-K and 1-L]. Plaintiff's brother further testified at the suppression hearing and said that he heard the warrants deputy tell Plaintiff there was no warrant for his arrest, and then tell Plaintiff he needed to come back to the back area for questioning. [See Exhibit 1-C, 3:9 – 4:18]. He testified that the deputy [Richard South] who told Plaintiff that he needed to come to the back for questioning made the statement sound like a command, not an optional request. [See Exhibit 1-C, 4:19-25].

The Honorable Michael Overstreet, Circuit Judge, examined all evidence presented to the court to support the arrest of the Plaintiff, which included[2]: mail addressed to Plaintiff reflecting a different address and dated October 13, 2009; an anonymous tip naming Plaintiff as a person who lived at the Nebraska Street address; and that Plaintiff had made thirteen purchases of pseudoephedrine within the eight months prior to the arrest. [See Exhibit 1-J]. Judge Overstreet

---

[1] Defendants received an Intent to Initiate Litigation on or about May 31, 2011, however, the evidence and file were destroyed on May 6, 2011. [Ex. C, King Dep. 10:1-16, 11:4-17, see also Exhibits 1-G and 1-H]. However, the hearing on the Motion to Suppress in the criminal matter, as well as the Order on that Motion, occurred well prior to the destruction of that evidence. Defendant King had considerable opportunity to present his evidence to the judge, yet there is reference to one single letter, the IRS letter. [Ex. C, King Dep. 27:20 – 29:11].

[2] The evidence presented during the suppression hearing is exactly the same evidence presented to this Court to support the Plaintiff's arrest.

concluded that this evidence did not rise to the level of probable cause needed to seize and detain Plaintiff, and that all evidence collected after the illegal seizure should be suppressed. [See Exhibit 1-J]. Despite the state court's ruling, Defendant King believes that his arrest of the Plaintiff was lawful, and does not believe that Judge Overstreet found the arrest unlawful. [Ex. C, King Dep. 26:14 – 29:25].

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, FL 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record, via CM/ECF this 29th day of October, 2014.

/s/ Marie A. Mattox
Marie A. Mattox